IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD FELIX BIAUCE, JR., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JACKIE JONES | : | NO. 08-4841 |
| | : | |
| Defendant. | : | |

**MEMORANDUM ON SUMMARY JUDGMENT**

**Baylson, J.**                                                                                          **July 27, 2010**

**I.      Introduction**

In this action pursuant to 42 U.S.C. § 1983, Plaintiff Donald Felix Biauce, Jr. ("Biauce") alleges, inter alia, that Defendant Department of Corrections Officer Jacqueline ("Jackie") Jones ("Officer Jones") violated his Eighth Amendment rights and retaliated against him.[1]  Pending before the Court is Officer Jones's Motion for Summary Judgment (ECF No. 47), which seeks to dismiss all claims against her0.  For the reasons set forth below, the Court will grant Officer Jones's Motion for Summary Judgment.

**II.     Factual & Procedural Background**

Assuming all factual inferences in favor of Biauce, the nonmoving party, the facts are as follows:  On March 13, 2008, Biauce, an inmate in the custody of the Pennsylvania Department of Corrections, was asked by a fellow inmate for his assistance in relocating to a new cell.

---

[1] Biauce's Complaint and Amended Complaint are not separated into specific § 1983 claims.  Instead, each consolidates all general allegations against Officer Jones into one paragraph, and provides no arguments specifically supporting his retaliation claim.  (See Compl. § V, ECF No. 1; Am. Compl. ¶ 8, ECF No. 29.)

1

(Biauce Dep. 12:16–19, Summ. J. Mot., Ex. 1, Feb. 19, 2010.) Before agreeing to provide his assistance, Biauce asked Officer Denis Boyle and Officer Jones if the inmate had been given permission to relocate. Both officers told Biauce that they had not been informed that the inmate had permission to move. (Biauce Dep. 12:22–13:1.) Before returning to his cell, Biauce asked Officer Boyle to "crack [his] cell" if he learned that the inmate received permission. (Biauce Dep. 13:1–2.)

Around 8:00 a.m., Biauce's cellblock opened, which he says he believed to be in response to his request to Officer Boyle.[2] (Biauce Dep. 16:18-24.) Biauce left his cell and asked Officer Jones to open the mop sink for him to help clean his fellow inmate's cell. (Biauce Dep. 14:8-10.) In response to Biauce's request, Biauce contends that Officer Jones "started cursing at [him] and swearing at [him] to mind [his] own business." (Biauce Dep. 15:16-17.) At this time, Officer Jones was the only officer in Biauce's housing unit. (Jones Decl. ¶ 16; Boyle Decl. ¶ 9.) Biauce asserts that Officer Jones continued to get louder, which provoked Biauce to also start raising his voice. (Biauce Dep. 15:22-24.) Eventually, Officer Jones ordered Biauce to return to his cell and to lock himself in. (Biauce Aff. 18:14-16.) As he was returning to his cell, Biauce alleges that Officer Jones insulted his mother, which caused him to "snap[] and los[e] it." (Biauce Dep. 20:13.) Biauce asserts that he doesn't remember what happened afterward because he suffers from "a chemical imbalance." (Biauce Dep. 20:19–21:3.)

During the period of time that Biauce cannot remember, Officer Jones contends that Biauce ran from the upper tier balcony down to the lower tier officer's desk, struck her with a

---

[2]Officer Jones contends that the inmates' cells had been opened for all inmates to go to the yard or other areas they had passes for, not for Biauce to assist his fellow inmate. (Jones Decl. ¶ 6, Summ. J. Mot., Ex. 2.)

wooden chair and a metal file holder, punched her with a closed fist, pulled her hair, and choked her. (Jones Decl. ¶¶ 12–15.) Officer Jones's version of the events is corroborated by the declaration of Officer Boyle, who witnessed the event from a nearby "bubble," separated from the housing unit by glass. (Boyle Decl. ¶¶ 10–17.) Officer Boyle averred that he could not leave the bubble, because he had to open doors for responding staff. (Boyle Decl. ¶ 17.) At no point during this action has Biauce contested that he initiated the physical alteraction, and in his deposition, he conceded that he remembered "pushing" Officer Jones (Biauce Dep. 21:12). At some point, Biauce asserts that Officer Jones slapped him in the face, which "snapped [him] back to reality," and that he was "st[anding] there kind of bewildered" when Officer Jones grabbed Biauce's legs and attempted to bite his groin.[3] (Biauce Aff. 21:15-17, 24:22–25:1, 25:7-8.) According to Officer Jones, she acted in self–defense, fearing for her life; she "had no way of knowing" that Biauce had lost his ability to control himself earlier in the altercation, and regained such control prior to her biting him. (Summ. J. Mot. 5, 7.)

Next, Biauce grabbed Officer Jones's face. Biauce avers that he only did so to attempt to prevent her from biting down a second time (Biauce Dep. 25:17-20), but Officer Jones contends that Biauce did not appear to be harmed from her first biting attempt, and by grabbing her face,

---

[3]Although Biauce's Amended Complaint alleges that Officer Jones "bit [him] upon his penis" (Am. Compl. ¶ 8), and Biauce repeatedly contends in his response to Officer Jones's Motion for Summary Judgment that Jones "did bite [his] penis," in violation of his Eighth Amendment rights (Resp. 1–4), he then testified at his deposition that his penis and surrounding groin area were not injured when Officer Jones attempted to bite him, because he was wearing sweat pants and had sewn an extra piece of cloth into the groin area where Officer Jones attempted to bite him (Biauce Dep. 26:19-24.) Accordingly, the Court finds that Biauce's allegation that Officer Jones bit his penis is unsupported and contradicted by his own deposition testimony. Throughout this opinion, the Court will describe this first biting incident as an "attempt" to bite Biauce's "groin," which more accurately reflects the evidence in the record, even when construed in Biauce's favor.

3

made her fear that he would "break her neck or inflict some other deadly injury" (Summ. J. Mot. 5–7). As Biauce grabbed Officer Jones's face, his pinky finger slid into her mouth, and she bit off the top digit of the finger. (Am. Compl. ¶ 8; Summ. J. Mot. 6–7.) Subsequently, another inmate intervened and pulled Biauce off Officer Jones, and other correctional officers responded. (Biauce Dep. 29:2-9.)

Biauce was taken to the infirmary, and then to the hospital, to have his finger treated, which included having x-rays performed and being given pain medication. (Biauce Dep. 29:23–33:5.) Aside from complaining about chest pains, for which he was put on a heart monitor, Biauce did not complain of additional pains and was not given further treatment. (Biauce Dep. 33:7–17.) Officer Jones was also taken to an outside hospital to be treated for injuries to her head, neck, back, and hand that she sustained during the altercation. Such treatment included two surgeries on her hand, cortisone shots, physical therapy, and pain medication. (Jones Decl. ¶¶ 20-21.)

In light of these events, the Program Review Committee sentenced Biauce to 270 days of disciplinary custody. (Biauce Dep. 43:5-8.) The parties do not dispute that Biauce then exhausted all administrative procedures and met the requirements within the Prison Litigation Reform Act before filing this civil action. (Am. Compl. ¶¶ 4–7; see also Summ J. Mot. 1–11 (not challenging Biauce's contention that he fully exhausted his claims).)

On October 3, 2008, Biauce commenced this suit, bringing claims pursuant to 42 U.S.C. § 1983 against Officer Jones in her individual capacity. (Compl. V.) Biauce's Amended Complaint alleges that Officer Jones violated the Eighth Amendment and retaliated against him, and seeks a jury trial, and monetary and punitive damages. (Am. Compl. ¶¶ 8-16.) The parties

4

have completed discovery. (Summ. J. Mot. 1.)[4] On April 9, 2010, Officer Jones filed the pending Motion.

## II. Jurisdiction and Legal Standards

### A. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Biauce brings claims under 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391(b).

### B. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

---

[4]On March 5, 2010, Biauce filed a Motion to Compel, which contended that Defendant Jones failed to cooperate in discovery, and to disclose the identities and contact information for inmates who may have witnessed the underlying altercation. (ECF No. 45.) This Court denied Biauce's Motion because nothing "in the record indicate[d] that [Jones] [wa]s aware of, and withholding" such information. (ECF No. 48.)

After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255. Since Biauce filed his Complaint and Amended Complaint pro se, this Court "must liberally construe his pleadings, and . . . will apply the applicable law, irrespective of whether [he] has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

## III. Discussion

As a preliminary matter, the Court finds that there are no genuine material facts in dispute that would preclude an award of summary judgment. Although Biauce contends that he does not remember exactly what happened at the beginning of the physical altercation (Biauce Dep. 20:19–21:3), and does not recall assaulting and attacking Officer Jones, as Officer Jones and witness Officer Boyle assert (Boyle Decl. ¶¶ 10-17; Jones Dep. ¶¶ 12-16), Biauce does not in fact dispute that he initiated the physical altercation, and that he was continuing to attack Officer Jones when she bit his groin and finger. In fact, Biauce admits that he was using force to resist Officer Jones immediately preceding each of her bites, first pushing her after she slapped him in the face, and after she attempted to bite his groin, thrusting his hands to her mouth (Biauce Dep. 25:17-20). Notably, Biauce's version of events falls short of contending that he stopped resisting Officer Jones prior to her biting him.

6

Even if Biauce's allegations are liberally construed to encompass the contention that he had ceased to resist Officer Jones at this time, the Court cannot find that such resistance was communicated to Officer Jones. In McDowell v. Sheerer, No. 08-4435, 2010 WL 1064537, at *3 (3d Cir. 2010) (nonprecedential), the Third Circuit reversed the district court's grant of summary judgment in favor of the government on an inmate's Eighth Amendment claims, because the inmate could be heard on video surveillance tapes saying he was no longer resisting, but the officers continued to use force on him, and a genuine issue of disputed fact existed as to whether he stopped resisting the officers. Unlike the inmate in McDowell, Biauce does not even allege that he orally or physically communicated to Officer Jones that he was no longer resisting her, nor does anything in the record support such a finding.

Officer Jones contends in her Motion for Summary Judgment that as a matter of law, Biauce cannot demonstrate that either his Eighth Amendment or retaliation claims entitle him to relief, and that in any event, qualified immunity applies, barring recovery on Biauce's Eighth Amendment claims. (Summ. J. Mot. 4–11.) The Court will address separately Biauce's Eighth Amendment and retaliation claims. Turning first to the Eighth Amendment claims, because the Court has concluded that qualified immunity applies, it need not analyze whether Biauce has set forth a cognizable Eighth Amendment claim.

### A. Eighth Amendment Claims

#### 1. Qualified Immunity Doctrine

The doctrine of qualified immunity protects government officials in their individual capacities "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S.Ct. 808,

815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity balances the dual interests of "hold[ing] public officials accountable when they exercise power irresponsibly," and "shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the United States Supreme Court established a two-step process for establishing when qualified governmental immunity applies to governmental officials in their individual capacity, which requires examining (1) "whether the facts that a plaintiff has alleged . . . or shown . . . a violation of a constitutional right," and if such a right has been shown, (2) whether the right was "'clearly established' at the time of defendant's alleged misconduct.'" Pearson, 129 S. Ct. at 815–16 (citing Saucier, 533 U.S. at 201). In Pearson, upon reexamining Saucier, the Supreme Court, though "contin[uing] to recognize that [Saucier's procedure] is often beneficial," concluded that its specific sequence "should not be regarded as mandatory in all cases." Id. at 818. Turning first to the second Saucier factor, the Court finds that assuming arguendo that Biauce has alleged or shown a violation of a constitutional right, this right was not "clearly established" at the time of Jones's alleged misconduct, and thus, Jones is entitled to qualified immunity.

### 2. **The Parties' Contentions**

In moving for summary judgment, Officer Jones contends that Biauce has not shown facts from which a jury could determine that she reacted with excessive and unjustifiable force. Specifically, Officer Jones avers that throughout the altercation, she only used force in attempting to bite Biauce's groin and in biting his finger after he attacked her and during the period in which he assaulted her, and that she feared for her life because she was not armed and was the only

8

corrections officer in Biauce's housing unit. (Summ J. Mot. at 4.) Biauce responds that summary judgment is inappropriate because "this sort of action (biting a mans [sic] penis & pinky finger) are [sic] not only excessive force, unnecessary wanton infliction of pain, but in todays society [sic] would also be barbaric and clearly an action classified by society as sadistic and malicious." (Pl.'s Resp. 2.) According to Biauce, Officer Jones initiated the verbal altercation that led to his physical attack, he had stopped resisting prior to Officer Jones attempting to bite his groin, and biting his pinky finger, and Officer Jones's actions were not a good faith attempt to restore order. (Pl.'s Resp. 2.)

### 3. Analysis

In examining whether Officer Jones is entitled to qualified immunity, the Court must determine whether Officer Jones's conduct constituted excessive and unnecessary force under clearly established constitutional law as of March 13, 2008, the date of the incident in question. The Eighth Amendment forbids "cruel and unusual punishment," which in turn, means "unnecessary and wanton infliction of pain." Whitley, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified.'" Graham v. Conner, 490 U.S. 36, 395 n.10 (1989) (quoting Whitley, 475 U.S. at 327). In determining whether the force applied by a prison administrator is excessive and unjustified, courts must assess whether such "force was applied in a good-faith effort to maintain or restore disciplined or maliciously and sadistically for the purpose of causing harm." See Hudson v. McMillian, 503 U.S. 1, 6 (1992) (internal quotation marks omitted). The relevant factors courts must consider are

9

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them;" and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321) [hereinafter "Whitley factors"].

Because correctional facilities have the "ever-present potential for violent confrontation and conflagration," their "internal security is peculiarly a matter normally left to the discretion of prison administrators," even when "actual unrest and conflict" occur. Whitley, 475 U.S. at 331. As a result, "[p]rison administrators should be . . . afforded wide-ranging deference in the adoption and execution of policies and practices that in the [administrators'] judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Id. at 331–32 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). While such deference does not "insulate from review actions taken in bad faith and for no legitimate purpose," this Court may not "freely substitute [its] judgment for that of [prison] officials once they have made a considered choice." Id. at 322.

Beginning with the first Whitley factor, the "need for the application of force," Whitley, 475 U.S. at 321, Officer Jones used force directly in response to Biauce's assaultive behavior towards her: By both Officers Boyle and Jones's accounts, which Biauce does not contest, Biauce overpowered Officer Jones, hit her with a chair and metal file folder, and continued to attack her by pulling her hair, throwing her to the ground, and grabbing her face. (Jones Decl. ¶¶ 13-15; Boyle Decl. ¶¶ 10-15.) Officer Jones, who was unarmed and the only corrections officer in the housing unit, had to employ force to defend herself from Biauce.

As for the second and third factors of "the relationship between the need and the amount of force that was used" and "the extent of injury inflicted," Whitley, 475 U.S. at 321 (alteration marks omitted), Officer Jones only attempted to bite his groin after she had been repeatedly beaten and pushed to the floor, and only bit his finger after Biauce "thrust [his] hands" down between his legs and grabbed her face, such that his pinky finger was in her mouth (Biauce Dep. 25:18). Biauce conceded at his deposition that he suffered no injury from the first bite, because he had sewn an extra piece of cloth into the groin area of his sweat pants, where she had attempted to bite him. (Biauce Dep. 26:19-24.) Thus, the first of Officer Jones's bites was by no means "excessive" as a response to Biauce's chain of serious physical attacks. The second bite, which by cutting off the top digit of Biauce's pinky finger, caused him "great pain" and "permanent disfigurement" (Compl. § V), also involved a reasonable amount of force relative to Biauce's attacks. As already noted, Officer Jones had suffered repeated blows from Biauce in the preceding moments, had been pushed to the ground, and was struggling to defend herself. Neither weapons nor other officers were available to help her. Given that Officer Jones's prior attempts to stop Biauce's attack by pushing him back, slapping him, and biting at his groin, which was protected by sweat pants, were all unsuccessful, biting down on Biauce's finger, which was already in her mouth, was not unjustifiable and excessive as a means of self-defense.

Biauce has contended that he suffered far more serious injuries than those sustained in Hudson v. McMillan, 503 U.S. 1, 4 (1992), in which the Supreme Court concluded that "use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Although the inmate in Hudson only "suffered minor bruises," facial swelling, loosened teeth, and a cracked dental plate, that inmate was beaten

11

by correctional officers while he was handcuffed and shackled. Id. at 4. These facts bear no resemblance to the case at hand, in which Biauce initiated the physical attack and was still attacking Officer Jones when she bit his finger. Far from suggesting that inmates' Eighth Amendment rights are violated whenever they suffer even minor injuries at the hands of prison officials, Hudson reiterated that it is "proper" for courts to examine the five Whitley factors in determining whether the force used was excessive and unjustifiable.

As for the remaining Whitley factors— "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response," 475 U.S. at 321—these also weigh against finding that Officer Jones's used excessive, unjustified force. The Court has the benefit of not only Officer Jones's own perceptions of the physical altercation, but also that of Officer Boyle, another correctional officer who witnessed the entire assault, but was not involved in the assault or able to intervene. Both Officers Jones and Boyle viewed Biauce's attacks as life–threatening to Officer Jones. (Jones Decl. ¶ 16; Boyle Decl. ¶ 16.) Biauce has not contested his involvement in the physical altercation, contending only that he does not remember much of the assault (Biauce Dep. 20:15–23:19), and the Court has no basis for finding that Biauce did not pose a very serious and potentially fatal threat to Officer Jones's safety. Moreover, Officer Jones, prior to the altercation, ordered Biauce to return to his cell in an attempt to curtailing her then–verbal conflict with Biauce, and preventing physical violence. (Biauce Decl. 18:14-18; Jones Decl. ¶ 11.) Taken together with Officer Jones's prior, unsuccessful efforts to defend herself and stop the physical altercation, which have already been detailed

above, her attempt to bite Biauce's groin, and her biting of his finger, came only after Officer Jones had tried repeatedly to temper her need to use such force.

In sum, none of the five Whitley factors suggests that Officer Jones used excessive, unjustified force in attempting to bite Officer Jones's groin, and biting his pinky finger. Accordingly, Officer Jones cannot be said to have violated Biauce's Eighth Amendment rights under clearly established constitutional law as of the time of their physical altercation, and thus, Officer Jones is entitled to qualified immunity, requiring dismissal of Biauce's Eighth Amendment claims.

      **B.**     **Retaliation**

In addition to bringing Eighth Amendment claims, Biauce alleged in his Complaint that Officer Jones's "actions were also of a [r]etaliatory nature." (Compl. § V.) It is unclear whether Biauce intended to bring retaliation claims against Officer Jones, because the Complaint did not detail any facts or allegations supporting Biauce's allegation that Officer Jones's actions were retaliatory in nature, and Biauce's Amended Complaint and response in opposition to the Motion for Summary Judgment only aver that he suffered extreme pain and suffering upon being bitten by Officer Jones, and do not mention any retaliation. (See Compl. § V; Am. Compl. 8.) However, because this Court must liberally construe Biauce's pro se pleadings, the Court will assume arguendo that Biauce intends to bring retaliation claims, and will examine whether he can show retaliation.

In order to prove retaliation, a prisoner-plaintiff must prove (1) "that the conduct which led to the alleged retaliation was constitutionally protected," (2) "that he suffered some adverse action at the hands of the prison officials," and if those two criteria are met, (3) that there is a

13

"causal link between the exercise of constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks omitted).

Biauce's complaint does not specify what underlying conduct he engaged in led to Officer Jones's allegedly retaliatory conduct. From the Complaint, the Court can infer that Biauce believes that Officer Jones retaliated against him because of his choice to exercise his freedom of speech by asking Officer Jones to open up the mop sink (Biauce Dep. 14:8-10). Officer Jones suggests in her Motion for Summary Judgment that the underlying constitutionally protected conduct Biauce could be referring to, is a prior lawsuit he filed against the Department of Corrections. (Summ. J. Mot. at 10.) Although Officer Jones does not dispute that such conduct is constitutionally protected, and that the adverse actions, her biting of Biauce's groin and finger, are sufficiently adverse, she asserts that Biauce's retaliation claim ultimately fails because he cannot prove a causal link between Biauce's constitutionally protected conduct and the adverse actions. (Summ J. Mot. 10.)

Because Officer Jones's Motion for Summary Judgment concedes that Biauce had engaged in constitutionally protected conduct and that he suffered an adverse action at the hands of Officer Jones, this Court will only consider the third prong of the Rauser analysis, requiring a causal relationship between the constitutionally protected conduct and the adverse action suffered by the plaintiff-inmate, 241 F.3d at 333. Despite whether the alleged constitutionally protected conduct is Biauce's speech to Officer Jones, or his prior lawsuit against the Department of Corrections, Biauce bears "the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Id. (internal quotation marks omitted). If Biauce can meet this burden, the burden will shift to Officer Jones

to "prove by a preponderance of the evidence that [she] would have taken the same disciplinary action even in the absence of the protected activity." Id.

If the constitutionally protected speech is Biauce's comments to Officer Jones prior to their physical altercation, Biauce cannot met his initial burden because the record amply demonstrates that Officer Jones bit Biauce because he was attacking her and she was acting in self-defense. Even if Biauce could show that Officer Jones was motivated to use force against Biauce because of his earlier comments, Officer Jones could demonstrate, beyond a preponderance of the evidence, that she would have bitten him even if he had not spoken the words, because she needed to defend herself and she feared for her life.

If, however, the constitutionally protected conduct is Biauce's prior lawsuit, nothing in the record suggests that Officer Jones was aware of the past lawsuit or knew about it (see Summ J. Mot. 10), and Biauce testified at his deposition that he has not filed any grievance or other complaint against Officer Jones prior to the March 13, 2008 altercation (Biauce Dep. 11:15-18). As a result, Biauce cannot meet his burden of showing that his past lawsuit motivated Officer Jones to bite him, and cannot establish a cognizable retaliation claim.

## IV. Conclusion

For the reasons detailed above, Officer Jones's Motion for Summary Judgment will be granted. An appropriate Order follows.

A:\Biauce v. Jones - Memo MSJ.wpd